

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-19-00023-CR

CLIFFORD CLARK, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 18F0805-102

Before Morriss, C.J., Burgess and Stevens, JJ.
Opinion by Justice Burgess

OPINION

The State's evidence during a bench trial showed that Clifford Clark spat on a jailhouse nurse and a jailer while being held on pending charges for arson. As a result, the trial court convicted Clark of two counts of harassment while in a correctional or detention facility and sentenced him to ten years' imprisonment on each count. The trial court ordered the sentences for the harassment convictions to run concurrently with each other, but consecutively with the sentences for the arson convictions. Clark appeals in companion causes 06-19-00033-CR, 06-19-00034-CR, and 06-19-00051-CR. *See* TEX. PENAL CODE ANN. § 22.11(a). The trial court also ordered Clark to pay court costs for all five convictions even though the charges were consolidated for trial.

On appeal, Clark argues that (1) the record does not contain sufficient evidence showing that his competence to stand trial was evaluated by a qualified psychologist, (2) the trial court erred in finding him competent to stand trial, (3) his counsel rendered ineffective assistance in failing to request an evaluation of his sanity at the time of the offense, (4) his oral waiver of a jury trial was invalid and unintelligently made on the trial court's representation that all sentences would run concurrently, (5) each judgment mistakenly references the existence of a plea bargain, and (6) the trial court erred in assessing duplicative court costs.

We find Clark's first complaint meritless and unpreserved, conclude that the trial court did not abuse its discretion in finding Clark competent to stand trial, and determine that Clark failed to meet his burden to show counsel rendered ineffective assistance. We also find Clark's jury trial waiver valid because he was not harmed by the lack of a written waiver and the record fails to

2

show Clark's waiver was based on misinformation that his sentences would not be stacked. However, because we sustain Clark's last two points of error, we modify the judgments for each count of harassment while in a correctional or detention facility to delete references to a non-existent plea bargain and delete the assessment of duplicative court costs. As modified, we affirm the trial court's judgments.

## I.     The Complaint that the Psychologist Was Unqualified is Meritless and Unpreserved

Clark's competence to stand trial was evaluated by Bryan E. Smith, Psy.D. On appeal, Clark argues that the record does not show Smith was statutorily qualified to render an opinion on his competence. Article 46B.022 of the Texas Code of Criminal Procedure specifies certain qualifying criteria for a psychiatrist or psychologist appointed by a trial court to conduct a competency examination.[1] Smith's evaluation recited, "As a Texas licensed psychologist …

---

[1]Under Article 46B.022,

> (a)     To qualify for appointment under this subchapter as an expert, a psychiatrist or psychologist must:
> > (1)      as appropriate, be a physician licensed in this state or be a psychologist licensed in this state who has a doctoral degree in psychology; and
> > (2)     have the following certification or training:
> > > (A)     as appropriate, certification by:
> > > > (i)     the American Board of Psychiatry and Neurology with added or special qualifications in forensic psychiatry; or
> > > > (ii)     the American Board of Professional Psychology in forensic psychology; or
> > > (B)     training consisting of:
> > > > (i)     at least 24 hours of specialized forensic training relating to incompetency or insanity evaluations; and
> > > > (ii)     at least eight hours of continuing education relating to forensic evaluations, completed in the 12 months preceding the appointment.
> (b)     In addition to meeting qualifications required by Subsection (a), to be appointed as an expert a psychiatrist or psychologist must have completed six hours of required continuing education in courses in forensic psychiatry or psychology, as appropriate, in either of the reporting periods in the 24 months preceding the appointment.

having met and maintained the provisions required by Article 46B.022 of the Texas Code of Criminal Procedure, Smith is qualified to conduct this evaluation." Because the record contains evidence showing Smith was statutorily qualified, Clark's complaint is meritless.

Moreover, to preserve a complaint for our review, a party must first present to the trial court a timely request, objection, or motion stating the specific grounds for the desired ruling if not apparent from the context. TEX. R. APP. P. 33.1(a)(1); *see Teixeira v. State*, 89 S.W.3d 190, 192 (Tex. App.—Texarkana 2002, pet. ref'd) (a complaint about the qualifications of an expert must be preserved by a specific objection). Also, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. TEX. R. APP. P. 33.1(a)(2). Clark made no complaint about Smith's qualifications to the trial court. As a result, he cannot challenge those qualifications on appeal.

We overrule Clark's first point of error as both meritless and unpreserved.

## II. The Trial Court Did Not Abuse Its Discretion in Finding Clark Competent

### A. Introduction

In his brief, Clark argues that by ordering an evaluation, the trial court "implicitly found some evidence to support a finding of incompetency." He further argues that when the trial court received Smith's first inconclusive report, "at that point, there was certainly evidence to support a finding of incompetency." In support of this argument, he notes that the first "report contained additional and much more specific evidence of Clark's potential incompetence." Thus, he

_____

*See* TEX. CODE CRIM. PROC. ANN. art. 46B.022.

4

concludes that "[t]here was insufficient evidence for the trial court to conclude that Clark was competent to stand trial, as it did." Clark's argument reflects a misunderstanding of the procedure for establishing incompetency to stand trial.

**B.      Procedure For Resolving Competency Questions Under Article 46B of the Texas Code of Criminal Procedure**

"As a matter of constitutional due process, a criminal defendant who is incompetent may not stand trial." *Boyett v. State*, 545 S.W.3d 556, 563 (Tex. Crim. App. 2018) (citing *Turner v. State*, 422 S.W.3d 676, 688 (Tex. Crim. App. 2013)). "A defendant is presumed competent to stand trial unless proved incompetent by a preponderance of the evidence." *Stine v. State*, 300 S.W.3d 52, 60 (Tex. App.—Texarkana 2009, pet. dism'd) (citing TEX. CODE CRIM. PROC. ANN. art. 46B.003(b)); *Gray v. State*, 257 S.W.3d 825, 827 (Tex. App.—Texarkana 2008, pet. ref'd). Incompetency to stand trial is shown if a person does not have "(1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against the person." TEX. CODE CRIM. PROC. ANN. art. 46B.003(a). "We review the totality of the facts surrounding the trial court's decision on the issue of competency for abuse of discretion." *Stine*, 300 S.W.3d at 60 (citing *Gray*, 257 S.W.3d at 827; *Moore v. State*, 999 S.W.2d 385, 393 (Tex. Crim. App. 1999)).

Although a defendant is presumed competent and bears the ultimate burden of proving incompetence to stand trial, Article 46B does not allow a trial court to stand by and wait for a defendant to raise the issue. Rather, in order to ensure that no incompetent defendant is put to trial, Article 46B places certain responsibilities on the trial court to inquire into the matter independently and force the parties to litigate the issue, if necessary. *See* TEX. CODE CRIM. PROC.

5

ANN. arts. 46B.003(b), 46B.004(a), 46B.005(a). "Procedurally, a trial court employs two steps for making competency determinations before it may ultimately conclude that a defendant is incompetent to stand trial." *Boyett*, 545 S.W.3d at 563. "The first step is an informal inquiry; the second step is a formal competency trial." *Id.*

### 1. When an Informal Inquiry Is Required

The trial court's duty to inquire into the issue of a defendant's competency to stand trial begins whenever it receives information "suggesting that the defendant may be incompetent to stand trial." TEX. CODE CRIM. PROC. ANN. art. 46B.004(a), (c). Upon receipt of such information, "the court on its own motion shall suggest that the defendant may be incompetent to stand trial," and it "shall determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial." TEX. CODE CRIM. PROC. ANN. art. 46B.004(b)–(c). The trial court may also "appoint one or more disinterested experts to . . . examine the defendant and report to the court on the competency or incompetency of the defendant" prior to holding the informal inquiry. TEX. CODE CRIM. PROC. ANN. art. 46B.021(a)(1).

The amount of information necessary to trigger an "informal inquiry" is low. It "may consist solely of a representation from any credible source that the defendant may be incompetent." TEX. CODE CRIM. PROC. ANN. art. 46B.004(c-1). It "may be based on observations made in relation to one or more of the factors described in Article 46B.024. . . ." *Id.* Or, it may be based "on any other indication that the defendant is incompetent within the meaning of Article 46B.003."

6

*Id*. Moreover, "a further evidentiary showing is not required to initiate the inquiry, and the court is not required to have a bona fide doubt about the competency of the defendant." *Id*.

### 2. The Informal Inquiry Stage

During the informal inquiry stage, the evidentiary standard requires the trial court to consider three matters. "First, . . . whether there is 'some evidence' of incompetency to stand trial." *Boyette*, 545 S.W.3d at 563. This "some evidence" standard requires only that there be "'more than none or a scintilla' of evidence that 'rationally may lead to the conclusion of incompetency.'" *Id.* at 564 (citing *Turner*, 422 S.W.3d at 692). "Second, a trial court must consider only evidence of incompetency, and it must not weigh evidence of competency against the evidence of incompetency." *Id*. And third, the evidence must be such that "it may rationally be inferred *not only* 1) that the defendant suffers some degree of debilitating mental illness, and that 2) he obstinately refuses to cooperate with his counsel to his own apparent detriment, *but also* that 3) his mental illness is what fuels his obstinacy." *Id*. The Texas Court of Criminal Appeals noted that this standard "is not a particularly onerous one—under this standard, the court asks "whether putting aside the evidence of competency, there is more than a scintilla of evidence that would support a rational finding of fact that the accused is incompetent to stand trial." *Id*. In short, while the evidence must be specific—meaning that it demonstrates more than mere mental illness and more than a mere failure to cooperate with defense counsel–there does not need to be much of it to require the trial court to take further action.

### 3. Trial Court's Duties Upon Finding Some Evidence that Would Support a Finding that the Defendant May Be Incompetent To Stand Trial

If, during the informal inquiry stage, the trial court finds "there is more than a scintilla of evidence that would support a rational finding of fact that the accused is incompetent to stand trial," *id.,* then the trial court is required to do three things: (1) "stay all other proceedings in the case," TEX. CODE CRIM. PROC. ANN. art. 46B.004(d); (2) appoint an expert to conduct a competency examination (if it has not already done so), TEX. CODE CRIM. PROC. ANN. art. 46B.021(b);[2] and (3) move forward with a formal competency trial, TEX. CODE CRIM. PROC. ANN. art. 46B.005(a)–(b). The trial court's requirement to "hold a formal competency trial" is mandatory, unless "(1) neither party's counsel requests a trial on the issue of incompetency, (2) neither party's counsel opposes a finding of incompetency, *and* (3) the court does not, on its own motion, determine that a trial is necessary to determine incompetency." TEX. CODE CRIM. PROC. ANN. art. 46B.005(c) (emphasis added).

### 4. When May A Trial Court Forego A Competency Trial Under Article 46B.005(c)?

Notably, the statute's plain language indicates that the exception in Article 46B.005(c) only applies when the parties and the trial court agree that the defendant is *incompetent*, not when they agree that he is *competent*. In other words, the statutory language allows the trial court to forego a competency trial only when all parties and the court agree the defendant is incompetent. Absent

---

[2]Also, "if a defendant wishes to be examined by an expert of the defendant's own choice, the court on timely request shall provide the expert with reasonable opportunity to examine the defendant." TEX. CODE CRIM. PROC. ANN. art. 46B.021(f).

8

this narrow exception, the trial court must conduct a competency trial when there is some evidence that the defendant may be incompetent to stand trial. Accordingly, the parties and the trial court may agree that the defendant is incompetent without a formal competency trial; but where "there is more than a scintilla of evidence that would support a rational finding of fact that the accused is incompetent to stand trial," *Boyette*, 545 S.W.3d at 563 (quoting *Turner*, 422 S.W.3d at 696), the trial court may not find that he is competent without holding a formal competency trial.[3] Once that evidentiary threshold has been passed, the defendant must be given an opportunity to prove that he is incompetent to stand trial, even if the expert evaluation concludes that he is competent.[4]

Nevertheless, we emphasize that this does not mean that a formal competency trial is required every time an expert evaluation determines that the defendant is competent. Far from it. As the Texas Court of Criminal Appeals noted in *Boyette*, "[I]t is not enough to present evidence

---

[3]Article 46B.005(c) states, "A trial under this chapter is not required if: (1) neither party's counsel requests a trial on the issue of incompetency; (2) *neither party's counsel opposes a finding of <u>incompetency</u>*; <u>and</u> (3) the court does not, on its own motion, determine that a trial is necessary to determine incompetency." TEX. CODE CRIM. PROC. ANN. art. 46B.005(c) (emphasis added). All three elements are required. If the parties and the trial court agree that the defendant is competent, then they do not agree the defendant is incompetent, and a competency trial must be held. Consequently, the parties and the trial court may avoid a trial by agreeing that the defendant is incompetent, but they may not avoid a trial by agreeing that he is competent. Prior to *Boyette*, in *Tadlock v. State*, we held that "a trial court may find the defendant competent based on an expert's evaluation, but unless both parties and the trial court agree that the defendant is incompetent, then the trial court cannot find that he is [incompetent] without first holding a competency trial." *Tadlock v. State*, 484 S.W.3d 560, 568 n.14 (Tex. App.—Texarkana 2016, no pet.). Based on *Boyette* and this opinion, we disavow *Tadlock v. State* to the extent it implies that a trial court can find a defendant competent based on an expert evaluation where there is also some evidence of incompetency.

[4]This one-way exception is consistent with the holding that "[a]s a matter of constitutional due process, a criminal defendant who is incompetent may not stand trial." *Boyette*, 545 S.W.3d at 563. In other words, to protect incompetent persons in the criminal justice system, the trial court and the parties may agree that the defendant is incompetent, but they cannot agree that he is competent. Thus, if there is "some evidence from any source that would support a finding that the defendant may be incompetent to stand trial," TEX. CODE CRIM. PROC. ANN. art. 46B.004(c), even if an expert evaluation finds the defendant is competent, the defendant must be provided an opportunity to prove that he is incompetent.

of either a defendant's mental illness alone or his refusal to cooperate with counsel." *Boyette*, 545 S.W.3d at 563 (citing *Turner*, 422 S.W.3d at 696). Rather, "there must be some evidence [at the informal inquiry] indicating that the defendant's refusal to rationally engage with counsel is caused by his mental illness" before the trial court is required to hold a competency trial. *Id*. Accordingly, competency trials will only occur in those instances where the trial court finds "some evidence to support a finding" that the defendant's "mental illness is what fuels his obstina[te]" "refusal to cooperate with his counsel to his own apparent detriment." *Id*. at 564.

One of the factors considered in an expert evaluation is "the degree of impairment resulting from the mental illness or intellectual disability, if existent, and the specific impact on the defendant's capacity to engage with counsel in a reasonable and rational manner." TEX. CODE CRIM. PROC. ANN. art. 46B.024(4). Where the only evidence before the trial court at the informal inquiry is the expert evaluation and the expert determines that the defendant's impairment does not "impact the defendant's capacity to engage with counsel" then the exception in Article 46B.005(c) does not come into play because the standard for holding a formal competency trial will not have been met in the first place. Consequently, in many cases, a competency trial will not be required where the expert evaluation determines that the defendant is competent, notwithstanding Article 46B.005(c)'s one-way application.[5]

---

[5]The key question for the trial court in the "informal inquiry" is not what the expert concludes in the evaluation report, but whether there is "some evidence to support a finding" that the defendant's "mental illness is what fuels his obstina[te]" "refusal to cooperate with his counsel to his own detriment." *Boyette*, 545 S.W.3d at 564 (citing *Turner*, 422 S.W.3d at 696). Of course, in many cases the expert report will be the only evidence before a trial court at an informal inquiry, and therefore, resolution of this question will often turn on the expert report's contents. Yet, it is the absence of even "a scintilla of evidence that would support a rational finding of fact that the accused is incompetent to stand trial" that is determinative, not the expert's ultimate conclusion. *Id.*

10

**C.     Analysis**

Here, Clark fell short of meeting the third requirement of the "some evidence" standard in *Boyette,* namely, there was no "evidence to support a finding" that the defendant's "mental illness is what fuels his obstina[te]" "refusal to cooperate with his counsel to his own apparent detriment." *Boyette*, 545 S.W.3d at 563 (citing *Turner*, 422 S.W.3d at 696). The record demonstrates that the trial court ordered Smith to evaluate Clark's competence to stand trial based on Clark's unopposed motion requesting a competency evaluation on the suggestion of incompetence. Smith's first report to the court, agreeing that Clark had a "longstanding history of mental disorder including paranoid schizophrenia, depression, and bipolar disorder," was inconclusive due to Clark's lack of cooperation during the interview. Smith wrote, "[I]t is not possible for me to form a definite professional opinion concerning Mr. Clark's competency to stand trial."

Although the trial court initially found that there was evidence supporting a "suggestion of incompetency" and properly ordered an expert evaluation and proceeded to the informal inquiry, the only thing before the trial court at that point was "evidence *suggesting* [Clark] may be incompetent to stand trial," not evidence "*to support a finding* of incompetency." TEX. CODE CRIM. PROC. ANN. arts. 46B.004(b), 46B.005(a) (emphasis added). When the trial court received Smith's first report, nothing changed. An inconclusive finding is not evidence "to support a finding of incompetency" because the absence of evidence is not evidence.[6]

_____

[6]In his first report, Smith questioned whether Clark's symptoms were feigned and manipulated.

11

Smith conducted a second evaluation of Clark and determined that he was competent to stand trial.[7]  Yet, nothing changed with the receipt of the second evaluation either; there was still no evidence "to support a finding of incompetency."  While there was evidence that Clark was mentally ill, "the fact that a defendant is mentally ill does not by itself mean he is incompetent." *Lampkin v. State*, 470 S.W.3d 876, 908 (Tex. App.—Texarkana 2015, pet. ref'd) (quoting *Turner*, 422 S.W.3d 691).  Missing from both reports was any "evidence indicating that the defendant's refusal to rationally engage with counsel [wa]s caused by his mental illness." *Boyett*, 545 S.W.3d at 564 (quoting *Turner*, 422 S.W.3d at 696).[8]

While Clark was free to controvert Smith's second report with evidence meeting the "some evidence" standard, including an evaluation from another qualified expert, he did not.[9]  Therefore, even after it received Smith's second report, there was nothing before the trial court constituting "some evidence to support a finding" that the defendant's "mental illness [was] what fuel[ed] his

---

[7]Because Smith's second report was omitted from our appellate record, Clark's opening brief failed to mention that report.  However, the reporter's record showed that the trial court considered Smith's second report.  When the reporter's record shows that the trial court viewed an exhibit not included in the appellate record, Rules 34.6(d) and (e) provide "[t]he solution to this dilemma." *Amador v. State*, 221 S.W.3d 666, 676 (Tex. Crim. App. 2007).  Rule 34.6(d) states, "If anything relevant is omitted from the reporter's record, the trial court, the appellate court, or any party may by letter direct the official court reporter to prepare, certify, and file in the appellate court a supplemental reporter's record containing the omitted items." TEX. R. APP. P. 34.6(d).  "The parties may also agree to correct an inaccuracy in the reporter's record, including an exhibit, without the court reporter's recertification." TEX. R. APP. P. 34.6(e).

The State attached Smith's second report as an exhibit to its brief.  Pursuant to *Amador*, and the Rules of Appellate Procedure, we requested the parties to inform us whether they could agree that the second report was omitted from, but should have been included in, the reporter's record.  Under Rule 34.6(e), the parties filed a joint response to our request in which they agreed that the second report should be considered a part of the reporter's record.

[8]In his second report, Smith stated, "There is likely some degree of potential psychosis and paranoia/delusional thinking, but this is not resulting in an inability to meet the standards of law concerning competency to stand trial, but rather he is choosing not to engage."

[9]*See supra* note 3.

obstina[te]" "refusal to cooperate with his counsel to his own apparent detriment." *Id*.

Accordingly, we cannot say that the trial court abused its discretion in determining Clark was competent to stand trial.[10]   We overrule Clark's second point of error.

## III.     Clark Failed to Meet His Burden to Show Counsel Rendered Ineffective Assistance

Smith's second report discussed Clark's mental health history, provided a diagnostic impression of schizoaffective disorder, opined that Clark "likely [had] some degree of potential psychosis and paranoia/delusional thinking,"[11] and stressed that Clark was "in need of psychiatric treatment due to his mental illness."  At Clark's bond reduction hearing, Clark's counsel asked the trial court if it would order "Smith to evaluate the defendant for insanity at the time of the offense." After the State questioned whether there was "enough evidence to go forward with the evaluation for insanity" because Clark was found competent, the trial court asked Clark's counsel to "check it out."  The trial court continued, " If it's something you want me to do, put it in a written motion, and I'll certainly consider it for you."  Because Clark's counsel never submitted a written motion requesting that Clark be evaluated for sanity at the time of the offense, Clark argues that his counsel rendered ineffective assistance of counsel.

As many cases have noted, the right to counsel does not mean the right to errorless counsel. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006).  To prevail on a claim of

---

[10]Also, before the trial court found Clark competent, the State questioned Clark on the issue during a bond reduction hearing.  At the hearing, Clark testified he had a college education and was aware of the charges against him and the roles of the prosecutor, his attorney, and the trial court during the criminal proceeding.  Clark appeared articulate during the hearing.  We do not recite these facts to weigh "evidence of competency against the evidence of incompetency," but only to highlight the lack of some evidence of incompetency.  *Boyett*, 545 S.W.3d at 564.

[11]Smith stated Clark's potential psychosis and paranoia/delusional thinking did not "result[] in an inability to meet the standards of the law concerning competency to stand trial."

ineffective assistance of counsel, the defendant must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). *See Ex parte Imoudu*, 284 S.W.3d 866, 869 (Tex. Crim. App. 2009) (orig. proceeding). A failure to make a showing under either prong defeats a claim for ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003).

The first prong requires a showing "that counsel's performance fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. This requirement can be difficult to meet since there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. As a result, the Texas Court of Criminal Appeals has said that, "[t]rial counsel 'should ordinarily be afforded an opportunity to explain his actions before being'" found ineffective. *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012).

When an appellate record is silent on why trial counsel failed to take certain actions, the appellant has "failed to rebut the presumption that trial counsel's decision was in some way—be it conceivable or not—reasonable." *Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007); *see Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). This is because allegations of ineffectiveness "must 'be firmly founded in the record.'" *Bone v. State*, 77 S.W.3d 828, 833 n.13 (Tex. Crim. App. 2002) (quoting *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)). When a party raises an ineffective assistance of counsel claim for the first time on direct appeal, the defendant must show that "under prevailing professional norms," *Strickland*, 466 U.S. at 688, no competent attorney would do what trial counsel did or no competent attorney would fail to do what trial counsel failed to do, *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005).

14

The existence of mental illness alone does not require the submission of an insanity issue. Before the affirmative defense of insanity can be considered, there must be some evidence that "at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong." TEX. PENAL CODE ANN. § 8.01. Thus, "[a] person may be medically insane, yet legally retain criminal responsibility for a crime where a mental condition does not prevent him from distinguishing right from wrong." *Afzal v. State*, 559 S.W.3d 204, 207 (Tex. App.—Texarkana 2018, pet. ref'd).

In this case, counsel's request for a sanity evaluation shows that she investigated the possibility of raising this defense. The trial court asked Clark's counsel to submit a written request for an examination should she wish to pursue the insanity defense. However, Smith's second report, Clark's articulate performance during the bond hearing, further investigation of Clark's mental health records, and discussion with Clark about his state of mind during the offenses could have led Clark's counsel to forego the defense. Because counsel's reasoning for deciding not to pursue a sanity evaluation is not shown on this silent record, we employ the strong presumption that counsel's decision fell within the wide range of reasonable professional assistance. *See Brown v. State*, 129 S.W.3d 762, 767 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (citing *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986)).

Because we find Clark failed to meet both prongs of the *Strickland* test, we overrule his third point of error.

15

## IV.    Clark's Jury Trial Waiver Was Valid

In his fourth point of error, Clark argues that his waiver of the right to trial by jury was invalid.  "A defendant has an absolute right to a jury trial." *Hobbs v. State*, 298 S.W.3d 193, 197 (Tex. Crim. App. 2009).  "As a matter of federal constitutional law, the State must establish, on the record, a defendant's express, knowing, and intelligent waiver of jury trial." *Id.*

On November 6, 2018, the trial court asked Clark, "It's been indicated to me that you want a bench trial, and you want me to set the punishment; is that correct?"  In response to the court's questions, Clark confirmed that he wanted a bench trial on guilt/innocence and punishment.  At that point, Clark's counsel informed the trial court that she had "discussed . . . whether [Clark] wanted to try [all offenses] separately or all at once" and asked, "[Y]ou want everything of your cases tried before the judge on November 30th; is that correct?"  After Clark responded affirmatively, the trial court stated:

> [R]eal quick, the benefit to you is this:  If you're found guilty of all of them, and I sentence you on all of them, they all have to run concurrently, not consecutively.  So it has some benefit for you.  I don't know whether I'll find you guilty yet or not, but I'm just saying, if it should come to that, there is some value in there for you for doing them all at once.

No other admonishments for jury trial waiver were in the record at the time.

At a November 26, 2018, pretrial hearing, the parties engaged in the following discussion:

> [BY THE STATE]:    . . . If you'll remember, we put on the record a few weeks ago, Mr. Clark elected to have a bench trial, and I think that he and his defense attorney also put on the record that they were going to try all of them at the same time.
>
> THE COURT:        Yes.  I recall.

16

[BY THE STATE]:    So that the sentences could not be stacked, which I frankly thought was a smart play.

THE COURT:        I can be honest with you, I probably would not have stacked them anyway.

[BY THE STATE]:    Yes, sir.

THE COURT:        I like it when what I was going to do would follow the law anyway.  So anyway, [defense counsel], anything you need on the record this afternoon?

[BY DEFENSE COUNSEL]:        Yes, Your Honor.

THE COURT:        Sure.

[BY DEFENSE COUNSEL]:        Mr. Clark, I talked with you briefly while ago.  It is still your desire to have a bench trial on all of your cases; is that correct?

THE DEFENDANT:        Yes, ma'am.  That's correct.

On the day of trial, before evidence was taken, Clark again confirmed that he wished for a bench trial on all cases.

## A.    Clark Was Not Harmed by the Lack of a Written Jury Trial Waiver

Article 1.13 of the Texas Code of Criminal Procedure requires a defendant who waives his right to a jury trial to do so in writing in open court with the approval of the court and the State. TEX. CODE CRIM. PROC. ANN. art. 1.13(a) (Supp.).  The trial court's judgments recited that Clark "waived the right of trial by jury," but the record fails to contain a written Article 1.13 waiver. Failure to comply with Article 1.13(a) is statutory error subject to a harm analysis under Rule 44.2(b) of the Texas Rules of Appellate Procedure, which requires us to disregard error that does not affect a defendant's substantial rights. *Johnson v. State*, 72 S.W.3d 346, 348–49 (Tex. Crim.

17

App. 2002) (citing TEX. R. APP. P. 44.2(b)); *Lopez v. State*, 71 S.W.3d 511, 513–14 (Tex. App.—

Fort Worth 2002, no pet.); *see Gray v. State*, 159 S.W.3d 95, 97–98 (Tex. Crim. App. 2005).

To decide whether Clark "was harmed by the failure to execute a written waiver, we . . .

ascertain whether he understood his right to trial by jury before his bench trial began." *Johnson*,

72 S.W.3d at 348–49. Here, the record shows that Clark knew about his right to a jury trial and

waived it on three separate occasions. Moreover, the judgments' recital that Clark waived his right

to trial by jury is "binding in the absence of direct proof of [its] falsity." *Id.* at 349 (quoting

*Breazeale v. State*, 683 S.W.2d 446, 450 (Tex. Crim. App. 1984) (op. on reh'g)). "The very use

of the term 'waive' presumes knowledge, because 'to waive a right one must do it knowingly–

with knowledge of the relevant facts.'" *Id.* (quoting BLACK'S LAW DICTIONARY 1276 (7th ed.

abridged 2000)). "In addition, 'waiver' is defined as 'the act of waiving or intentionally

relinquishing or abandoning a known right, claim, or privilege.'" *Id.* (quoting WEBSTER'S

INTERNATIONAL DICTIONARY 2570 (1966)). Where there is no allegation or suggestion from the

record that the defendant did not know about his right to a jury trial, the judgment's recital is

binding and leads to the conclusion that a defendant's substantial rights were not affected by the

lack of a written jury trial waiver. *Id.* As the Texas Court of Criminal Appeals held in *Johnson*,

we likewise hold that Clark was not harmed by the lack of a written jury trial waiver.

A. **The Record Does Not Show that Clark's Jury Trial Waiver Was Based on Misinformation that His Sentences Would Not Be Stacked**

Next, Clark argues that his jury trial waiver was invalid because the trial court misinformed

him about the possibility of stacked sentences. While the record shows that the trial court stated

18

it would order concurrent sentences for all of Clark's offenses, the record does not support the assertion that the misstatement contributed to Clark's decision to waive a jury trial.

As applicable to Clark's case, Section 3.03(a) of the Texas Penal Code states, "When the accused is found guilty of more than one offense arising out of the same criminal episode prosecuted in a single criminal action, . . . the sentences shall run concurrently." TEX. PENAL CODE ANN. § 3.03 (Supp.). Because the harassment charges arose out a different criminal episode than the arson charges, the trial court inaccurately informed Clark that it would not stack any of the sentences. Yet, the record shows that Clark was not misinformed until after he stated he wished for a bench trial and that the misinformation was supplied when Clark was deciding whether he wished for separate trials or a consolidated trial. The misinformation could not have affected Clark's jury trial waiver since a jury would have no role in determining whether Clark's sentences would run concurrently or consecutively. We find that nothing in the record shows that Clark's waiver of a jury trial was conditioned on the misinformation or that Clark would have wanted separate trials. Simply put, the record does not support Clark's argument.

We overrule Clark's fourth point of error.

## V. The Judgments Must be Modified

### A. We Delete the Reference to a Plea Bargain

In his last two points of error, Clark argues that the judgments mistakenly state that Clark's sentences were "Terms of [a] Plea Bargain." The State concedes the point of error. "This Court has the power to correct and modify the judgment of the trial court for accuracy when the necessary data and information are part of the record." *Anthony v. State*, 531 S.W.3d 739, 743 (Tex. App.—

Texarkana 2016, no pet.) (citing TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993)). Because there was no plea bargain agreement in this case, we modify the trial court's judgments by deleting the phrase "Terms of Plea Bargain."

### B. We Delete the Order to Pay Court Costs

Next, the trial court issued two separate judgments for each count of harassment in a correctional or detention facility, and Clark was assessed court costs of $234.00 in both judgments. The trial court also assessed $234.00 for each arson conviction in companion case numbers 06-19-00033-CR, 06-19-00034-CR, and 06-19-00051-CR. In his last point of error, Clark argues that the assessment of more than one court cost was duplicative. We agree.

"If punishment is anything other than a fine," a trial court must "adjudge the costs against the defendant." *See* TEX. CODE CRIM. PROC. ANN. art. 42.16. However, "[i]n a single criminal action in which a defendant is convicted of two or more offenses or of multiple counts of the same offense, the court may assess each court cost or fee only once against the defendant." TEX. CODE CRIM. PROC. ANN. art. 102.073(a).[12]

Here, since Clark was convicted of two or more offenses in a single criminal action, the trial court could order payment of court costs only once. *See* TEX. CODE CRIM. PROC. ANN. art. 102.073(a); *Cain v. State*, 525 S.W.3d 728, 733–34 (Tex. App.—Houston [14th Dist.] 2017, pet.

---

[12]The State argues that Clark's courts costs should be assessed twice—once for one of the harassment counts and once for one of the arson convictions—because the harassment charges arose from a separate criminal episode while Clark was jailed pending trial of the arson charges. We conclude, as did our sister court, that the plain language of the statute does not support the State's argument because all of Clark's charges were consolidated for trial. *See Hurlburt v. State*, 506 S.W.3d 199, 203 (Tex. App.—Waco 2016, no pet.) ("in a single criminal action" refers to those occasions when "allegations and evidence of more than one offense . . . are presented in a single trial or plea proceeding").

20

ref'd). The amount of the cost "is determined according to the category of offense" and "must be assessed using the highest category of offense that is possible based on the defendant's convictions." TEX. CODE CRIM. PROC. ANN. art. 102.073(b). Clark's conviction for arson of a habitation in companion cause 06-19-00034-CR held the highest category of offense as compared to his remaining convictions. Accordingly, we sustain Clark's last point of error and delete the assessment of court costs from both judgments for harassment in a correctional or detention facility.

## VI. Conclusion

We modify each judgment of conviction for harassment in a correctional or detention facility to delete the phrase "Terms of Plea Bargain" and delete the assessment of court costs. As modified, we affirm the trial court's judgment.

Ralph K. Burgess
Justice

Date Submitted: November 13, 2019
Date Decided: November 18, 2019

Publish

21